UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JENNIFER M. HUNTER,

                        Plaintiff,                                          **MEMORANDUM AND ORDER**

            -against-                                                        13-CV-2659 (SLT)(VVP)

NEW YORK CITY HEALTH & HOSPITALS
CORPORATION, *et al.*,

                        Defendants.
-----------------------------------------------------------x

**TOWNES, United States District Judge:**

Plaintiff Jennifer M. Hunter, a social worker employed by the Kings County Hospital

Center ("KCHC"), brings this action against her employer, the New York City Health &

Hospitals Corporation (the "HHC") and the City of New York (the "City"), alleging violations of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. §§ 1981, 1983,

1985 and 1986, and New York State law. Defendants, all of whom are represented by the

Corporation Counsel of the City of New York, now move to dismiss this action pursuant to Rules

12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure. For the reasons stated below, the

Court grants defendants' motions with respect to all six federal claims alleged in the Amended

Complaint, declines to exercise supplemental jurisdiction with respect to the two remaining

claims, and dismisses this action without prejudice to pursuing those two claims in state court.

## BACKGROUND

The following facts are drawn from the Amended Complaint and the exhibits attached

thereto and are assumed to be true for purposes of this Memorandum and Order. Plaintiff

Jennifer Hunter is an African American citizen of Caribbean ancestry. Amended Complaint, ¶ 9.

Since 1990, she has been employed as a social worker at defendant KCHC, one of eleven

municipal hospitals operated by defendant HHC. *Id.*, ¶¶ 3, 9, 12. Plaintiff has a master's degree in Social Work, has worked as an adjunct professor at both New York University and Long Island College, and has been a clinical instructor in the Department of Psychiatry at SUNY Downstate. *Id.*, ¶ 12. Although she alleges that she is "more experienced and qualified than ... caucasian employees holding supervisory positions," plaintiff "has not been promoted since her appointment." *Id.*

On April 16, 2012, plaintiff's supervisor, Bernice Fraser, sent plaintiff an e-mail relating to a probationary employee, Jennifer Jules.[1] That e-mail asked plaintiff to "read through Ms. Jules['] corrective plan" and stated: "[Y]our help is needed to monitor her progress." Plaintiff apparently perceived that e-mail as requesting that she "give a negative evaluation to ... Jules, another black employee," *id.*, ¶ 13, and sent Fraser a reply stating that she was "extremely uncomfortable with this particular task ...." Plaintiff noted that she was "not privy to the reason(s) the plan was implemented," that her input was "not requested in addressing the precipitating factors," and that she did "not wish to be involved." Plaintiff closed her e-mail by stating: "Please do not perceive this as a form of insubordination, it is just quite uncomfortable for me to do."

In September 2012, plaintiff received a negative evaluation from her supervisor. *Id.*, ¶ 3. Plaintiff responded to the evaluation by filing a "rebuttal." *Id.* The Amended Complaint does not attach a copy of the evaluation or rebuttal, but these documents are discussed in the U.S. Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire and a Charge of

---

[1] Copies of that e-mail and plaintiff's response thereto are included in both Exhibits A and C to the Amended Complaint.

Discrimination, both of which are included in Exhibit A to the pleading. According to those documents, Eva Sanders, the director of the Social Work Department, gave plaintiff the "opportunity to retract [the] rebuttal and resubmit one that [plaintiff] would feel comfortable having in her personnel file." She further stated that, if plaintiff elected not to do so, she "would only respond to the items that are germane and not the comments that are incendiary and in some cases based on factual inaccuracies."

### *The Charge of Discrimination*

On or about December 26, 2012, plaintiff filed a Charge of Discrimination with the EEOC (the "Charge"), alleging race and national origin discrimination and retaliation. *Id.*, Ex. A. The Charge, which is included in Exhibit A to the Amended Complaint, focused primarily on the evaluation, which plaintiff characterized as "a form of retaliation due to [her] repeated verbalization of the importance of having the appropriate tools to identify and adequately work with the Native American Indian population, and not to assume the patients' race, culture, religion and nationality based on their appearance." The Charge also theorized that the evaluation was "based on [plaintiff's] successful efforts in being awarded ... salary that was illegally withheld due to ... Sander's refusal to acknowledge [plaintiff's] vacation days ...."

The Charge accused Sanders of creating a hostile work environment by, *inter alia*, inappropriately using "her administrative position in an attempt to intimidate" plaintiff into retracting her rebuttal. According to the Charge, the department in which plaintiff works "appears to operate under a cloud of control and intimidation primarily fueled by the fears of relocation, work schedule changes, and termination." As a result, "displeasures are often not verbalized" because of fear that Sanders will retaliate.

At some juncture—either "[w]hen she filed [her] rebuttal" or "[w]hen she filed a complaint with the EEOC," *id.*, ¶ 3—plaintiff was transferred from the inpatient department to the outpatient department. *Id.*, ¶¶ 3, 13. According to plaintiff, working conditions are "harsher and more onerous" in the outpatient department because the hours are longer, the caseload is heavier, and the quality of work less challenging than in the inpatient department. *Id.*, ¶¶ 10, 13. In addition, the transfer deprived plaintiff of the opportunity to work with doctors and to supervise interns. *Id.*, ¶ 10.

On February 13, 2013, the EEOC issued a right-to-sue letter, advising plaintiff that it was closing its file on the Charge. The EEOC stated that it was "unable to conclude that the information obtained [during its investigation] establishes violations" of any discrimination statute. *Id.*, Ex. B. The letter advised plaintiff of her right to commence a lawsuit within 90 days of her receipt of the letter.

### The Original, Pro Se Complaint

On April 29, 2013, plaintiff, proceeding *pro se*, commenced this action by filing a form complaint (the "Complaint"), which attached copies of the EEOC's Intake Questionnaire, the Charge, and the right-to-sue letter. That Complaint, a copy of which is attached to the Amended Complaint as Exhibit C, named "New York City Health & Hospitals Corporation, aka Kings County Hospital" as the defendant and alleged violations of both Title VII and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"). Complaint, p. 1. The pleading alleged that plaintiff was "Black/Indian," and listed her national origin as "Jamaican/Arawak," *id.*, ¶ 7, but did not allege plaintiff's age.

4

Although plaintiff checked a box to indicate that she was alleging "[u]nequal terms and conditions of ... employment," *id.*, ¶ 4, the facts alleged in the omplaint pertained solely to retaliation. The pleading principally alleged that "management" had retaliated against plaintiff in some unspecified way because she "would not participate in their efforts to bring up on charges and terminate Jennifer Jules." *Id.*, ¶ 8. In addition, plaintiff implied that she suffered some form of retaliation because she "confronted management about ... approved time/leave back on 12/11 which they disapproved ...." *Id.* Plaintiff did not allege a failure to promote her, or provide any facts suggesting such a claim.

On October 16, 2013, Corporation Counsel filed a request for a pre-motion conference on behalf of HHC. Plaintiff never responded to that request. At an initial conference on November 21, 2013, Magistrate Judge Pohorelsky suggested that plaintiff might wish to amend her complaint and granted her leave to do so. See Minute Entry field Nov. 22, 2013. The magistrate judge directed that the amended complaint be filed by January 6, 2014.

### The Amended Complaint

On January 29, 2014, an attorney appeared on behalf of plaintiff and filed the Amended Complaint. Like the Complaint, the Amended Complaint alleges a violation of Title VII. However, the Title VII claim—which is contained in the "Fifth Claim for Relief" in the Amended Complaint—principally alleges a failure to promote. Specifically, this cause of action alleges:

> The defendant has discriminated against plaintiff because of her race, color and national origin, with respect to the terms and conditions of her employment by refusing to promote to a supervisory position with KCHC, and by refusing to grant plaintiff a meaningful remedy for the violation of her rights ....

Amended Complaint, ¶ 25. The cause of action further implies that this issue was raised in the Charge, *id.*, ¶ 26, and notes that "the EEOC filed a Right to Sue Letter on February 13, 2013." *Id.*, ¶ 27.

Unlike the Complaint, the Amended Complaint alleges violations of 42 U.S.C. §§ 1983, 1985, 1986 and 1981. The § 1983 claims are set forth in the "First Claim for Relief," which alleges claims against an unspecified "defendant," and the "Seventh Claim for Relief," which alleges a "Monell Claim Against The City of New York for the actions of KCHC." The first cause of action alleges that "[t]he defendant," acting under the color of law, deprived plaintiff of "privileges and immunities secured by the Constitution of the United States, when it decided not to promote plaintiff to the supervisory positions to which she was entitled, and not to permit plaintiff to have access to a meaningful institutional remedy for violation of her rights." *Id.*, ¶ 16. The cause of action then lists various Constitutional rights which were allegedly violated by the unspecified defendant's "decisions." First, it alleges that the defendant violated plaintiff's First and Fourteenth Amendment rights by "basing their [*sic*] decision, to an impermissible extent, on plaintiff['s] exercise of her right of free speech." *Id.*, ¶ 16(a). Second, the pleading alleges that the defendant deprived plaintiff of her Fourteenth Amendment right to equal protection by "intentionally basing their [*sic*] decisions, to an impermissible extent, on plaintiff's race, color and national origin." *Id.*, ¶ 16(b). Third, the first cause of action alleges that the defendant deprived plaintiff of her Fourteenth Amendment due process rights "by refusing to appoint plaintiff to a supervisory position, ... by failing to provide a procedural requirement for plaintiff to appeal this adverse decision, and by failing to provide plaintiff with the opportunity to appeal from her adverse evaluation report." *Id.*, ¶ 16(c).

6

The Seventh Claim for Relief alleges that defendant "City of New York, through KCHC had, in effect, several interrelated de facto policies, practices and customs." *Id.*, ¶ 33. The cause of action then lists as examples of these policies, practices and customs "[t]he failure to properly supervise, train, instruct and discipline administrative staff" who (a) "participated in recruiting minority personnel," (b) "participate in evaluating minority personnel," (c) "evaluate the performance of minority personnel," (d) "post the vacancies for supervisory personnel," and (e) "promote minority personnel." *Id.*, ¶¶ 33(a)-(e). The cause of action also alleges that these "interrelated policies, practices and customs" were "[i]mplemented with deliberate indifference" and were a "direct and proximate cause of the violations of plaintiff's constitutional rights ...." *Id.*, ¶ 34.

The §§ 1985 and 1986 claims are set forth in the "Second Claim for Relief" and the "Third Claim for Relief." The second cause of action alleges that unspecified "[w]hite supervisory personnel employed by the KCHC conspired for the purpose of depriving plaintiff of the equal protection of laws, and of equal privileges of [*sic*] immunities under the Constitution by refusing to appoint plaintiff to a supervisory position, and by refusing to grant her access to a meaningful institutional remedy for the violation of her rights." *Id.*, ¶ 18. This cause of action further alleges that "[d]efendants' conduct in this regard was motivated impermissibly by plaintiff's race, color and national origin, by personal animus against plaintiff and by improper consideration of plaintiff's exercise of free speech." *Id.* The third cause of action alleges that "[t]he defendants" knew the "the wrongs conspired to be done, as alleged in the second claim for relief[,]" were about to be committed; that the "[s]upervisory staff within the institution had the power to prevent" those wrongs "by appointing plaintiff to a supervisory position ... or ...

granting plaintiff some other effective remedy to address the deprivation of her rights," but that the supervisory staff neglected or refused to prevent, or help in preventing, the wrongs. *Id.*, ¶ 21.

The § 1981 claim is set forth in the "Fourth Claim for Relief." This cause of action alleges that an unspecified "defendant ... deprived plaintiff of her right to make an enforced contract to her full and equal benefit, and to enforce laws and proceedings for the security of plaintiff's employment, because of plaintiff's race, color and national origin ...." *Id.*, ¶ 23.

There are two other causes of action, both of which allege state-law claims. The "Sixth Claim for Relief" alleges that "[t]he conduct of the defendant as alleged in the foregoing claims for relief constitute[s] discrimination on the basis of plaintiff's race, color and national origin" in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "SHRL"). Amended Complaint, ¶¶ 29-30. The "Eighth Claim for Relief" alleges that "[t]he defendants ... were employees and agents of the City of New York or of the KCHC," and seeks to hold the City of New York liable for the defendants' "acts and omissions" under "the State Law Doctrine of *respondeat superior*." *Id.*, ¶ 37.

### The Instant Motion to Dismiss

Defendants now move to dismiss the Amended Complaint pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure. The Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Defendant's Memo") contains five points and various subpoints which, for purposes of the discussion below, will be grouped in the following four categories. First, defendants argue that this Court lacks jurisdiction over plaintiff's Title VII claim because her failure-to-promote claim was not raised in the Charge or

reasonably related to the claims that were raised therein. Second, defendants argue that the Amended Complaint does not state (1) a plausible failure-to-promote claim under Title VII, §§ 1983 and 1981, or the SHRL; (2) a plausible First Amendment retaliation claim or a claim for violation of her due process rights; (3) a plausible claim for conspiracy under §§ 1985 or 1986, or (4) a plausible claim under § 1981. Third, the City seeks to dismiss plaintiff's *Monell* claim because the Amended Complaint does not allege facts to suggest that any of the alleged conduct was taken pursuant to a municipal custom or practice. The City also asserts (1) that it is not a proper party to the action because it was never served with a copy of the summons and complaint; (2) that it cannot be liable under § 1983 on a theory of *respondeat superior*, and (3) that the Amended Complaint contains no allegations against the City or any of its agencies, but only against HHC, a separate entity. Fourth, defendants argue that plaintiff's claims are time-barred to the to the extent they are based on conduct which occurred prior to the statutes of limitations applicable to Title VII, the SHRL, and 42 U.S.C. §§ 1981, 1983, 1985, and 1986.

In her Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Plaintiff's Memo"), plaintiff addresses only some of the arguments raised in Defendants' Memo. Plaintiff makes no effort to controvert defendants' argument that this Court lacks jurisdiction over her failure-to-promote claim because it was not raised in the Charge. Plaintiff also does not controvert defendants' assertions that she has failed to state a claim under 42 U.S.C. §§ 1985 and 1986. In addition, plaintiff concedes that the City is not a proper party.

Plaintiff counters defendants' other points, arguing (1) that she "has established a plausible claim of discriminatory failure to promote ... under Title VII, Sections 1981 and 1983,

and the .... SHRL," Plaintiff's Memo, p. 7-8; (2) that she "has stated a plausible claim for retaliation under the First Amendment," *id.*, p. 13, and (3) that her claims are timely. *Id.*, p. 15. However, some of plaintiff's arguments rely on facts and grounds which are not contained in the Amended Complaint. As discussed in more detail below, Plaintiff's Memo relies on facts not alleged in the Amended Complaint in an effort to rebut defendants' claim that she never applied for a promotion. In addition, Plaintiff's Memo asserts that her Title VII cause of action encompasses disparate treatment and hostile work environment claims.

## DISCUSSION

### A. The Legal Standards

Defendants move to dismiss the Amended Complaint in this case pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing "that the Amended Complaint fails to state a plausible claim upon which relief may be granted and that the Court lacks subject matter jurisdiction and personal jurisdiction over the City ...." Defendants' Memo, p. 2. A claim is "properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)). When "the case is at the pleading stage and no evidentiary hearings have been held ... [a court] must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (internal citations and quotations omitted). However, "in adjudicating a motion to dismiss for lack of subject-matter

10

jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coalition, v. Rowland*, 494 F.3d 71, 77, n. 4 (2d Cir. 2007).

A plaintiff also bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit. *Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (*per curiam*)). "In order to survive a motion to dismiss for lack of personal jurisdiction [pursuant to Rule 12(b)(2)], a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "Such a showing entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" *Penguin Group*, 609 F.3d at 35 (quoting *In re Magnetic Audiotape*, 334 F.3d at 206) (brackets added and internal quotation marks and ellipsis omitted in *Penguin Group*).

"When determining the sufficiency of [a plaintiff's] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [the plaintiff's] possession or of which [the plaintiff] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). "A complaint must be dismissed if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" *Brown v. Daikin America Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *shcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

## B. *The Title VII Claim*

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 273 (2d Cir. 2012) (quoting 42 U.S.C. § 2000e–2(a)(1)). "Promotion decisions are covered by this language." *Id.* (citing *Ricci v. DeStefano*, 557 U.S. 557, 578-85 (2009); *Estate of Hamilton v. City of New York*, 627 F.3d 50, 55 (2d Cir. 2010)). However, "mistreatment at work ... is actionable under Title VII only when it occurs because of an employee's ... protected characteristic." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)) (ellipses in *Patane*). Moreover, to be actionable under Title VII, the mistreatment "must rise to the level of an 'adverse employment ... action.'" *Id.* (quoting *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005)).

### 1. *Exhaustion of Administrative Remedies*

Before filing a Title VII claim, a plaintiff must first exhaust his or her administrative remedies by timely filing of a charge of discrimination with the EEOC or an equivalent state or

city agency. 42 U.S.C. § 2000e–5(e); *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC"); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (*per curiam*). "This exhaustion requirement serves 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action,' and 'enable[s] the EEOC to provide the alleged wrongdoer with notice and to permit possible conciliation.'" *Fleming v. Verizon New York Inc.*, 419 F. Supp. 2d 455, 462 (S.D.N.Y. 2005) (citations omitted; brackets in *Fleming*). The purposes of the exhaustion requirement would be frustrated if a plaintiff could litigate a claim not previously presented to the EEOC. *See Miller v. Int'l Tel. & Tel.*, 755 F.2d 20, 26 (2d Cir. 1985). Accordingly, a district court can only "hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dept. of Housing Preservation & Development*, 990 F.2d 1397, 1401 (2d Cir. 1993) (citing cases).

"[T]he failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement." *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (internal quotations and citations omitted). A plaintiff is not required to plead or demonstrate administrative exhaustion at the pleading stage. *See DiPetto v. U.S. Postal Serv.*, 383 F. App'x 102, 104 (2d Cir. 2010) (summary order). However, exhaustion of administrative remedies through the EEOC remains "'an essential element of Title VII's statutory scheme,' and one with which defendants are entitled to insist that plaintiffs comply." *Francis*, 235 F.3d at 768 (quoting *Butts*, 990 F.2d at 1401).

In this motion to dismiss, defendants argue that plaintiff has not exhausted her administrative remedies with respect to the failure-to-promote claim. Defendants correctly note that this claim was not raised in the Charge, which is attached to the Amended Complaint as Exhibit C. That document focused primarily on the evaluation and on Sanders' actions in attempting to intimidate plaintiff into retracting her "rebuttal." The Charge did not mention that plaintiff had ever sought a promotion, or that such a promotion had been denied on account of plaintiff's race, color or national origin.

Plaintiff's Memo does not specifically address defendants' exhaustion argument. Rather, it attempts to counter defendants' argument that the Amended Complaint does not state a plausible failure-to-promote claim by alleging that plaintiff expressed interest in succeeding Sanders as director of KCHC's Social Work Department in April 2012. However, these allegations were not included in the Charge or in the Amended Complaint. Moreover, these allegations make it clear that the failure-to-promote claim is based on events which occurred months before plaintiff filed the Charge. Since plaintiff's failure-to-promote claim was not included in the Charge and does not arise from "conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge," it is unexhausted and must be dismissed. *See Butts*, 990 F.2d at 1401.

### 2. *Disparate Treatment and Hostile Work Environment*

Plaintiff Memo asserts that her Title VII cause of action encompasses more than just a failure-to-promote claim. First, Point IV of Plaintiff's Memo asserts that "[p]laintiff has articulated the elements of Disparate Treatment under Title VII." Plaintiff argues that KCHC not only has a "dual system of promotion"—in which positions were not publicly posted, but

14

communicated privately to Caucasian employees—but also has a "dual system of performance evaluations," in which black employees are given unfavorable reviews which impede their "upward mobility," and a "dual system of discipline," in which those who "challenged the system were severely punished or forced out. Plaintiff's Memo, p. 11. Second, Point V of Plaintiff's Memo asserts that "[p]laintiff has articulated the elements of a hostile working environment under Title VII." Plaintiff asserts that "many of the Black employees in the social work department have been treated unfairly for many years," that her negative evaluation was retaliation for "repeated verbalization," and that she was "subjected to a campaign of retaliation" after she was awarded salary which had been illegally withheld and refused to retract her rebuttal to the negative evaluation. *Id.*, p. 12.

Notwithstanding plaintiff's assertions, the "Fifth Claim for Relief" in the Amended Complaint—the only cause of action which alleges a violation of Title VII—does not specifically allege either a disparate treatment claim or a hostile work environment claim. The fifth cause of action contains four paragraphs, only one of which advances any claims.[2] That paragraph alleges:

> The defendant has discriminated against plaintiff because of her race, color and national origin, with respect to the terms and conditions of her employment by refusing to promote to a supervisory position with KCHC, and by refusing to grant plaintiff a meaningful remedy for the violation of her rights, and have thereby intentionally engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e-2(a).

---

[2]The first paragraph incorporates the allegations set forth in preceding paragraphs, Amended Complaint, ¶ 24, while the last two paragraphs allege that plaintiff has filed a charge of discrimination with the EEOC and has received a right-to-sue letter. *Id.*, ¶¶ 26-27.

Amended Complaint, ¶ 25.

Even if the "Fifth Claim for Relief" could be read as alleging disparate treatment and/or a hostile work environment claim, the facts alleged in the Amended Complaint would be insufficient to state a claim under either of these two theories. In asserting that she has articulated a "disparate treatment" claim, plaintiff alleges that KCHC treats black and white workers differently in three respects. First, plaintiff alleges that KCHC has a dual system of promotion, in which openings are not posted but privately communicated to prospective Caucasian candidates. These allegations are essentially the same as the failure-to-promote claim addressed above. As noted above, the failure-to-promote claim was not administratively exhausted.

Second, plaintiff claims KCHC has a dual system of performance evaluations, in which black employees are given unfavorable evaluations and punished for complaining about adverse evaluations. The Amended Complaint alleges, in a conclusory manner, that "[a]lmost all of the senior personnel who received negative evaluations were overwhelmingly black, while similarly situated white employees were given favorable evaluations." Amended Complaint, ¶ 3. The pleading also alleges that plaintiff received a negative evaluation in September 2012. However, the Charge attached to the Amended Complaint implies that the evaluation was authored by Bernice Fraser—herself a Black/Indian woman, with whom plaintiff had a "productive working relationship."

Although the Charge asserts that the evaluation "may have been written under some form of duress," the pleading does not allege that plaintiff received the evaluation because of her protected characteristics. Rather, the Amended Complaint and the Charge attached thereto

characterize the evaluation as retaliation for plaintiff's (1) "repeated verbalization of the importance of having the appropriate tools to identify and adequately work with the Native American Indian population, and not to assume the patients' race, culture, religion and nationality based on their appearance;" (2) "successful efforts" to recoup salary which was withheld because of "Sanders' refusal to acknowledge [plaintiff's] vacation days;" and (3) refusal to participate in what plaintiff perceived as an effort to discharge a black, probationary employee.

Similarly, the Charge does not allege that the decision to transfer plaintiff from the inpatient department to the outpatient department had anything to do with plaintiff's race. To the contrary, the Charge alleges that the transfer was retaliation either for plaintiff's refusal to rescind a "rebuttal" to the negative evaluation, which Sanders found to contain "incendiary" comments and "factual inaccuracies," or for plaintiff's decision to file the Charge.

Third, plaintiff alleges that KCHC has a dual system of discipline, in which those who "challenge the system" are "severely punished." However, the Amended Complaint does not allege that plaintiff herself has been ever disciplined, much less "severely punished." Moreover, plaintiff's allegations themselves suggest that the "dual system of discipline" is not based on the employee's protected characteristics, but rather on whether the employee "challenges the system."

The facts alleged in the Amended Complaint are also insufficient to support a hostile work environment claim. To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive;" (2) creates an environment "that the plaintiff subjectively

17

perceives as hostile or abusive;" and (3) "creates such an environment because of the plaintiff's [protected characteristics]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).

In support of her hostile work environment claim, plaintiff asserts that "many of the Black employees in the social work department have been treated unfairly for many years;" that she received negative comments on her evaluation following her refusal to "provide written reports on [a] Black case worker, Ms. Jennifer Jules;" that "the administration retaliated against her after she was awarded a salary that was illegally withheld;" and that "[w]hen she refused to retract her rebuttal" of the negative evaluation, she was "subjected to a campaign of retaliation." *Id.*, p. 12. However, the assertion that black employees have been "treated unfairly" is conclusory, and plaintiff herself does not allege that the other three acts were undertaken because of plaintiff's race, color or national origin. Indeed, Plaintiff's Memo specifically alleges that plaintiff received the negative evaluation because she refused to provide reports on Ms. Jules; that the administration retaliated against her because of bitterness over a salary dispute; and that she was subjected to a "campaign of retaliation" when she refused to retract her "rebuttal." *Id.*

## C. The Section 1983 Claims

The Amended Complaint's First and Seventh Claims for Relief both allege violations of 42 U.S.C. § 1983. This section itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). In order to maintain a § 1983 action, a plaintiff must allege both that the conduct complained of was "committed by a person acting under color of state law" and "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

The First Claim for Relief alleges that an unspecified "defendant" violated plaintiff's First and Fourteenth Amendment rights in various respects. First, it alleges that "the defendant" violated plaintiff's First and Fourteenth Amendment rights when it decided not to promote her based on her "exercise of her right to free speech." Second, it alleges that "the defendant" violated plaintiff's Fourteenth Amendment right to equal protection by basing unspecified "decisions" on plaintiff's race, color and national origin. Third, the first cause of action alleges that "the defendant" deprived plaintiff of her due process rights under the Fourteenth Amendment by (1) refusing to appoint plaintiff to a supervisory position, (2) "failing to provide a procedural requirement for plaintiff to appeal this adverse decision, and (3) failing to provide plaintiff with the opportunity to appeal from her adverse evaluation report.

This First Claim for Relief is obviously defective in that it fails to identify "the defendant" to whom this cause of action pertains. However, defendants do not rely this point, but instead argue that plaintiff's allegations are insufficient to state a failure-to-promote claim, a First Amendment retaliation claim, an equal protection claim, or a due process violation. The Court will address these arguments seriatim.

### 1. The Failure-to-Promote Claim

In arguing that plaintiff has failed to state a failure-to-promote claim, defendants' rely in part on *Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998). In *Brown*, the Second Circuit upheld the dismissal of a Title VII failure-to-promote claim on the ground that the plaintiff neglected to allege that she applied for, was qualified for and was rejected from, any specific position or positions at Coach. The Second Circuit held that, to state a failure-to-promote claim, a plaintiff is required "to allege that she or he applied for a specific position or positions and was

19

rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." *Id.*, at 710. The Court noted, *inter alia*, that this requirement would "ensure[] that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer." *Id.*

Relying on *Brown*, defendants argue that the Amended Complaint does not allege that plaintiff applied for a specific position for which she was qualified and for which KCHC was seeking applicants. Defendants' Memo, p. 8. Plaintiff does not specifically contest this point. To the contrary, plaintiff tacitly admits its validity by alleging facts which are not included in the pleading. Specifically, Plaintiff's Memo alleges that in April 2012, after learning that KCHC was seeking a replacement for Director Sanders, plaintiff made several telephone calls to a Michelle Emmons and sent an e-mail to a Ms. Evans, expressing interest in the position. Plaintiff's Memo, p. 3. Plaintiff alleges that Ms. Emmons—whose position at KCHC is never alleged—told her that the position was not posted, and refused to communicate further with her. *Id.* Thereafter, plaintiff checked the KCHC website for a posting, but saw none. Plaintiff asserts that the job, which ultimately went to a Caucasian employee who was much less experienced that plaintiff, was never posted. *Id.* Plaintiff alleges that the failure to post supervisory position, or the failure to post the positions until a Caucasian is about to obtain the position, is purposeful and designed to keep qualified black employees from obtaining the supervisory positions.

None of these facts were alleged in the Amended Complaint. As defendants correctly note in their reply, "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y.1999) (citing *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F.Supp. 222, 229

(S.D.N.Y.1989)); *CAC Group, Inc. v. Maxim Group, LLC*, No. 12 Civ. 5901 (KBF), 2012 WL 4857518, at *1 n. 1 (S.D.N.Y. Oct. 10, 2012) ("It is axiomatic, however, that a plaintiff cannot amend a complaint with new allegations contained in an opposition to a motion to dismiss."). Accordingly, this Court cannot consider these facts in determining the sufficiency of the Amended Complaint. Since plaintiff has not sought permission to amend her complaint to allege these facts, the Court declines to consider whether the facts alleged in Plaintiff's Memo would be sufficient to state a failure-to-promote claim.

## 2. *First Amendment Retaliation*

In order to make out a First Amendment retaliation claim, a public employee must establish "that [s]he has engaged in protected First Amendment activity, [s]he suffered an adverse employment action, and there was a causal connection between the protected activity and the adverse employment action." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 114 (2d Cir. 2011) (brackets added). "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "To constitute speech on a matter of public concern, an employee's expression must be fairly considered as relating to any matter of political, social, or other concern to the community. Speech that, although touching on a topic of general importance, primarily concerns an issue that is personal in nature and generally related to the speaker's own situation, such as his or her assignments, promotion, or salary, does not address matters of public concern." *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) (citation omitted).

In arguing that plaintiff has failed to state a First Amendment retaliation claim, defendants assume that the speech at issue is plaintiff's Charge. Defendants then argue that

plaintiff has failed to "establish a causal connection between the EEOC complaint and any adverse action." Defendants' Memo, p. 13. Specifically, defendants argue that "the Amended Complaint does not provide sufficient factual details to establish that the 'transfer to the outpatient department' or having her vacation pay docked was motivated by her filing of [*sic*] complaint with the EEOC." *Id.*

In her response, plaintiff articulates two theories of retaliation. First, plaintiff notes that the Charge alleged that the negative evaluation was retaliation for her "repeated verbalization of the importance of having the appropriate tools to identify and adequately work with the Native American population" and her "successful efforts in being awarded ... salary that was illegally withheld due to ... Sanders refusal to acknowledge ... vacation dates that were approved by ... the then administrator." Plaintiff's Memo, pp. 13-14. Second, plaintiff asserts that, after she filed her Charge with the EEOC, Sanders retaliated by reassigning her from the inpatient to the outpatient department. *Id.*, p. 14.

The theories alleged by plaintiff, however, are not alleged in the First Claim for Relief. That cause of action alleges that an unspecified defendant violated plaintiff's First and Fourteenth Amendment right by basing the decision not to promote plaintiff on plaintiff's exercise of her right of free speech. The cause of action makes no mention of the negative evaluation or the Charge and, therefore, does not provide notice of the theories espoused in Plaintiff's Memo.

Even if the cause of action alleged the theories set forth in Plaintiff's Memo, it would not make out a First Amendment retaliation claim against any of the three defendants named in this

action. Plaintiff's Memo specifically alleges that Sanders—not defendants—retaliated against plaintiff. Plaintiff's Memo states:

> Ms. Sanders was the director of the unit in which plaintiff worked, and she was the only individual who was in a position to take adverse action against her. Ms. Sanders had already demonstrated her hostility by docking her pay and giving her an unfavorable evaluation. Plaintiff indicated [*sic*] Ms. Sanders['] evident displeasure when she attempted to rebut the claims in her appraisal evaluation. Surely it is plausible to incur [*sic*] that after plaintiff submitted a formal complaint to the EEOC, ... Ms. Sanders, who was effectively the head of the unit, implemented an adverse employment action against the plaintiff.

*Id.*, pp. 14-15.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Plaintiff cannot base a defendant's liability on *respondeat superior* or on "linkage in the ... chain of command." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Accordingly, allegations of Sanders' retaliation would not suffice to state a § 1983 claim against her employers.[3]

### 3. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution 'is essentially a direction that all persons similarly situated should be treated alike.'" *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *City of Cleburne v.*

---

[3]The Court expresses no opinion as to whether plaintiff could allege a cause of action for retaliation under Title VII, since that cause of action is not specifically alleged in any of the causes of action in the Amended Complaint.

*Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To establish ... intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994). There must be "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Ruiz v. County of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010) (quoting *Graham v. Long Isl. R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). While the cases need not be identical, "the comparator must be similarly situated to the plaintiff 'in all material respects.'" *Id.* (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

In this case, plaintiff alleges that "the defendant" violated her Fourteenth Amendment right to equal protection by "basing their [*sic*] decisions, to an impermissible extent, on plaintiff's race, color and national origin." Amended Complaint, ¶ 16(b). The First Claim for Relief refers to two decisions, alleging that "[t]he defendant ... decided not to promote plaintiff to the supervisory positions to which she was entitled, and not to permit plaintiff to have access to a meaningful institutional remedy for violation of her rights." *Id.*, ¶ 16. However, as defendants correctly note, the Amended Complaint does not allege that plaintiff herself was treated worse than similarly situated white employees on account of her race, color or national origin. Rather, the Amended Complaint largely relies on conclusory statements regarding the negative treatment of blacks. For example, the pleading alleges that "black applicants are effectively prevented from applying for ... supervisory positions" because the positions are "not publicly posted, but are communicated orally within a narrow administrative elite," and "[l]ower level black administrative personnel are routinely given negative evaluations" and are "punished" when they

24

question these evaluations. Amended Complaint, ¶ 2. These allegations do not specifically mention similarly situated whites.

Indeed, the Amended Complaint contains only one reference to "similarly situated" white employees. Paragraph 3 alleges that "[a]lmost all of the senior personnel who received negative evaluations were overwhelmingly black, while similarly situated white employees were given favorable evaluations and were promoted." However, this language does not allege that plaintiff was treated worse than these similarly situated whites. While the Amended Complaint does allege that plaintiff received a negative evaluation in September 2012, attachments to the Amended Complaint indicate that the evaluation came a few months after plaintiff refused to report on Ms. Jules—a refusal which plaintiff herself recognized might be viewed as insubordinate. There are no allegations to suggest that a white employee who refused to do what his or her supervisor requested received a more positive evaluation.

Moreover, there are no allegations to suggest that plaintiff herself was not promoted because of a negative evaluation. As noted above, there are no allegations that plaintiff ever applied for a promotion. Although Plaintiff's Memo asserts that she inquired about applying to be director of the Social Work Department in April 2012 and was told that her application would be premature, those inquiries preceded plaintiff's negative evaluation. Accordingly, the pleading's general allegations concerning "similarly situated white employees" are insufficient to support plaintiffs' claim of an equal protection violation.

### 4. *Procedural Due Process*

Procedural due process requires that government action depriving an individual of substantial interests in life, liberty or property "be implemented in a fair manner." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "In evaluating due process claims, '[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (quoting *Narumanchi v. Board of Trs. of the Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988)) (brackets added by *Perry*). "If a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process." *Narumanchi*, 850 F.2d at 72.

In her First Claim for Relief, plaintiff alleges that an unspecified defendant violated her Fourteenth Amendment due process rights by failing (1) to promote plaintiff or provide a procedure "for plaintiff to appeal" the denial of promotion, and (2) to "provide plaintiff with the opportunity to appeal from her adverse evaluation report." Amended Complaint, ¶ 16(c). Defendant argues that the Amended Complaint is "devoid of any facts alleging that plaintiff possessed a protected liberty or property interest and that she was deprived of that interest without due process of law." Defendants' Memo, p. 13. Plaintiff's Memo does not rebut this argument.

Plaintiff's claim that "the defendant" was required to promote plaintiff or to provide a procedure for plaintiff to appeal from KCHC's failure to promote her is without any basis in law or fact. First, "an employee generally does not have a constitutionally protected property interest in obtaining—or being considered for—a promotion." *Bertram v. Metropolitan Transp. Auth.*, No. 13 Civ. 338 (RA), 2014 WL 748933, at *6 (S.D.N.Y. Feb. 26, 2014) (citing *McMenemy v.*

*City of Rochester*, 241 F.3d 279, 287-88 (2d Cir. 2001)). Second, as noted above, the Amended

Complaint does not allege that plaintiff ever formally applied for a promotion. Accordingly,

even if an applicant had a property interest in being considered for a promotion, there is nothing

in the pleading to suggest that plaintiff had such an interest or suffered a deprivation of due

process in being unable to "appeal" from the denial of the promotion.

      Plaintiff's claim that she was not provided with "the opportunity to appeal from her

adverse evaluation report" suggests that plaintiff is attempting to allege a deprivation of her

liberty interest in her professional reputation without due process. "In order to state a claim for

deprivation of an intangible legal right to one's reputation, commonly known as a 'stigma plus'

claim, a plaintiff must allege facts showing both '(1) the utterance of a statement about her that is

injurious to her reputation, that is capable of being proved false, and that ... she claims is false,

and (2) some tangible and material state-imposed burden ... in addition to the stigmatizing

statement.'" *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (internal quotation marks omitted).

To make out the first element, the "defamatory statement must be sufficiently public to create or

threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily

does not implicate a liberty interest." *Id.* To make out the second element, the plaintiff must

allege "a specific and adverse action clearly restricting the plaintiff's liberty—for example, the

loss of employment." *Id.*, at 87-88.

      The allegations in the Amended Complaint fail to make out a stigma plus claim. First,

the pleading alleges only that the "evaluation report" was "negative" or "adverse," but does not

allege that it contained statements which were false or capable of being proved false. Second, the

Amended Complaint does not allege that "evaluation report" was sufficiently public to create or

threaten a stigma. Third, the Amended Complaint does not allege a "specific and adverse action" resulting from the alleged defamatory evaluation. At most, plaintiff merely speculates that the evaluation may make it difficult for her to be promoted within KCHC in the future.

For the reasons stated above, this Court concludes that plaintiff's First Cause of Action fails to state a claim. Since plaintiff has not stated a § 1983 claim, the Seventh Claim for Relief—which seeks to impose liability for the § 1983 violation upon the City—also fails. In addition, the seventh cause of action is dismissed because (1) plaintiff concedes that the City is not a proper party to this action, Plaintiff's Memo, p. 15, and (2) plaintiff fails to identify a municipal custom, policy or practice which allegedly caused the violation of § 1983. Rather, plaintiff essentially alleges negligence, claiming that the City failed "to properly supervise, train, instruct and discipline administrative staff ...." Amended Complaint, ¶ 33. "Negligence is not a valid basis for liability under 42 U.S.C. § 1983." *Iwachiw v. New York State Dept. of Motor Vehicles*, 299 F. Supp. 2d 117, 121 (E.D.N.Y. 2004) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)).

## D. The Section 1981, 1985 and 1986 Claim

With respect to the Second Claim for Relief—alleging a violation of § 1985—defendants argue (1) that plaintiff's claim is "a naked recitation of the elements of a conspiracy claim" and (2) that a Title VII violation cannot be the basis for a § 1985(3) claim. Defendants' Memo, p. 14. With respect to the Third Claim for Relief—alleging a violation of § 1986—defendants argue that a § 1986 claim is predicated on a valid § 1985 claim. Defendants' Memo, p. 15. Finally, with respect to the Fourth Claim for Relief—alleging a violation of § 1981—defendants argue that because the express cause of action for damages created by § 1983 constitutes the exclusive

federal remedy for violation of the rights guaranteed in § 1981 by state governmental units, plaintiff's § 1981 claim should be dismissed along with the § 1983 claims.

Defendants' arguments with respect to plaintiff's claims pursuant to 42 U.S.C. §§ 1981, 1985 and 1986 are not specifically opposed by plaintiff. However, her failure to oppose cannot itself justify dismissal of these three causes of action. *See McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). Accordingly, the Court has considered the merits of defendants' arguments. It concludes that defendants are correct and that plaintiff has failed to state a claim for relief under §§ 1981, 1985 or 1986.

First, the Supreme Court has held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). Accordingly, a plaintiff's "§ 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983." *Gladwin v. Pozzi*, 403 F. App'x 603, 605 (2d Cir. 2010) (summary order). Since this Court has already determined that plaintiff's § 1983 claims are without merit, her § 1981 claims are dismissed.

Second, "[i]t is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)). Thus, if a plaintiff fails "to allege facts that would provide 'plausible grounds to infer an agreement,'" the plaintiff has failed to state a conspiracy claim. *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007)). In this case, plaintiff has

not alleged any facts to suggest the existence of conspiracy, but relies solely on conclusory allegations. Accordingly, her §§ 1985 and 1986 claims are dismissed.

### E. Plaintiff's State-law Claims

A district court "may decline to exercise supplemental jurisdiction over a claim ... [if] ... the district court has dismissed all claims over which it has original jurisdiction ...." 28 U.S.C. § 1367(c)(3). Although "[t]he exercise of supplemental jurisdiction is within the sound discretion of the district court," *Lundy v. Catholic Health Sys. of Long Isl. Inc.*, 711 F.3d 106, 117 (2d Cir. 2013), the Second Circuit has repeatedly stated that "if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir.2008)). This rule is consonant with the Supreme Court's observation that when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

For the reasons explained above, this Court grants defendants' motion to dismiss all six of the federal claims alleged in the Amended Complaint. The remaining two causes of action —the Sixth and Eighth Claims for Relief—allege state-law claims. In keeping with *Brzak* and *Cohill*, the Court declines to exercise supplemental jurisdiction over these two causes of action.

### CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted with respect to the First, Second, Third, Fourth, Fifth and Seventh Claims for Relief—the only federal causes of

action alleged in plaintiff's Amended Complaint. The Court declines to exercise supplemental jurisdiction with respect to plaintiff's Sixth and Eighth Claims for Relief, and dismisses this action without prejudice to pursuing those two claims in state court. The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and to close this case.

      **SO ORDERED.**

SANDRA L. TOWNES
United States District Judge

Dated: March 31, 2015
      Brooklyn, New York